IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLOMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 07-CR-00231 |
| | ) | |
| Plaintiff, | ) | JUDGE COLLEEN KOLLAR-KOTELLY |
| | ) | |
| vs. | ) | |
| | ) | |
| DENNIS D. SHARP, | ) | **MOTION FOR RELEASE PENDING SENTENCING** |
| | ) | |
| Defendant. | ) | |
| | ) | ORAL HEARING REQUESTED |

Now comes the Defendant, Dennis D. Sharp, by and through the undersigned counsel, Ian N. Friedman & Associates, L.L.C., and local counsel, Jeffrey T. Green, and hereby submits a Motion for Release Pending Sentencing. The reasons for this motion are set forth fully in the accompanying Memorandum in Support attached hereto and incorporated by reference herein.

Respectfully submitted,

/s/ Ian N. Friedman
IAN N. FRIEDMAN (0068630)
Lead Counsel for Defendant
Ian N. Friedman & Associates, LLC
700 West St. Clair Avenue, Suite 110
Cleveland, OH 44113
(216) 928-7700
ifriedman@inflaw.com

/s/ Jeffrey T. Green
Jeffrey T. Green (426747)
Local Counsel
Sidley Austin LLP
1501 K Street NW
Washington, D.C. 20005-1401
(202) 736-8291
jgreen@sidley.com

1

**CERTIFICATE OF SERVICE**

A copy of the foregoing has been served this 4th day of October, 2007, to Jeffrey Pearlman, Esq., Office of the United States Attorney, 555 Fourth Street, NW, room 10-447, Washington, D.C. 20530.

/s/ Ian N. Friedman
IAN N. FRIEDMAN
Lead Counsel for Defendant

/s/ Jeffrey T. Green
JEFFREY T. GREEN
Local Counsel for Defendant

## MEMORANDUM IN SUPPORT

## STATEMENT OF FACTS

On or about July 19, 2007, Members of the Metropolitan Police Department (MPD) and Immigration and Customs Enforcement (ICE) executed a search warrant at the address of Defendant, Dennis Sharp. The search team seized various data storage devices that Mr. Sharp identified as belonging to him. Mr. Sharp was present during the search and volunteered to provide a statement to law enforcement officers. This statement was memorialized on video and in a handwritten statement by Mr. Sharp.

After his arrest, undersigned counsel applied for and received admission Pro Hac Vice to represent Mr. Sharp in the instant matter. Thereafter, Mr. Sharp plead guilty to a violation of one (1) count of 18 U.S.C. § 2252 A(a)(2), to wit: Possession of Child Pornography, by way of information and waived his right to a Grand Jury Indictment. The court accepted Defendant's Plea of guilty on October 2, 2007. Sentencing in the instant matter is set for January 18, 2008, before this Honorable Court. Once the plea was accepted, this Honorable Court granted the government's oral motion to detain Mr. Sharp pending sentencing. The Defendant now submits the instant brief requesting his release pending sentencing.

## LAW & ARGUMENT

### I. THIS HONORABLE COURT HAS JURISDICTION TO DETERMINE WHETHER MR. SHARP IS ENTITLED TO RELEASE PENDING IMPOSITION OF A SENTENCE.

Title 18 United States Code § 3143 provides, in pertinent part:

(a)  Release or detention pending sentence

(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. § 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

(2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless:

(A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

(ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and

(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

Furthermore, 18 U.S.C. § 3145(c) grants an individual the right to appeal a court's order of detention under 18 U.S.C. § 3143:

> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2) , and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

Therefore, an individual who is detained per a court order under § 3143 has a right to appeal the order under § 3145(c) and, if exceptional reasons are shown why such person's detention is not appropriate, that individual may be released.

Pursuant to 18 U.S.C. § 3143(2), crimes of violence typically mandate automatic detention absent satisfaction of the requirements under (A) and (B) of that subsection. However, a majority of federal courts have held that § 3143 should be read in conjunction with § 3145(c), thereby vesting District Courts with the authority to determine whether there are exceptional reasons why such person's detention is inappropriate given the facts and circumstances of the particular case.[1] Consequently, a defendant can obtain release by meeting the conditions of release set forth in 18 U.S.C. § 3143(a)(1) and by making a clear showing of "exceptional reasons" why his/her detention would not be appropriate.

---

[1] *See* United States v. Devinna, 5 F.Supp. 2d 872 at 873 (E.D. Cal. 1998), holding that every Appellate Court that has faced the issue has decided, or assumed, that § 3145(c) is available to district courts; *See also* United States v. DiSomma, 961 F.2d 494 (2d Cir. 1991), holding that upon a proper showing, § 3145(c) permits release of even "mandatory detainees."

## II. MR. SHARP IS ENTITLED TO RELEASE UNDER 18 U.S.C. § 3143 AND § 3145(c) BECAUSE HE DOES NOT POSE A RISK OF FLIGHT, HE DOES NOT POSE A DANGER TO THE COMMUNITY, AND HIS CASE PRESENTS EXCEPTIONAL REASONS WHY DETENTION WOULD NOT BE APPROPRIATE.

In <u>United States v. Mitchell</u>, 358 F.Supp. 2d 707 (E.D. Wis. 2005), the United States District Court for the Eastern District of Wisconsin held that the defendant met the statutory requirement of exceptional reasons for continued release pending sentencing. In so holding, the court reasoned that a person subject to detention under § 3143(a)(2) may nevertheless be released if (1) he meets the conditions set forth in § 3143(a)(1) – if he shows by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released; and (2) it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate. <u>Id</u>. at 708. Because the statute does not define the phrase "exceptional reasons," courts have been left with the task of fleshing out an appropriate definition. In its current form, the phrase has generally been interpreted to mean that which is unique, uncommon, rare or out of the ordinary. <u>Id</u>. Furthermore, district courts have considerable discretion when deciding these issues, restricted only by the requirement that the defendant's situation be sufficiently unique to make detention pending sentencing inappropriate. <u>Id</u>. Ultimately, a court must make such a finding based on legal reasons, factual reasons, or some combination of both – a balancing of the Court's duty to assure the defendant's presence at court proceedings, the safety of the community, and the exceptional circumstances or reasons that weigh in favor of release. *See* <u>United States v. Kaquatosh</u>, 252 F.Supp. 2d 775 (E.D. Wis. 2003).

### a. **MR. SHARP HAS SATISFIED THE FIRST SET OF REQUIREMENTS FOR RELEASE UNDER 18 U.S.C. § 3143(a)(1) BECAUSE HE DOES NOT POSE A RISK OF FLIGHT OR A DANGER TO THE COMMUNITY**

A court that is initially deciding whether detention is necessary is instructed by 18 U.S.C. § 3142(g) to consider several factors, including:

> (3) the history and characteristics of the person, including (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

In U.S. v. Horvath, 575 F.Supp. 516 (D.C. Minn. 1983), the Minnesota District Court held that, in making bail or bond decisions, a Court may consider a wide variety of sources, including: (1) the defendant's presentence report, giving special attention to information of his prior record and pending criminal charges; (2) a defendant's trial demeanor; and (3) any other information indicative of an individual's propensity to

commit crime generally or to otherwise endanger the community.

Viewing the evidence in light of the statutory language and its general purpose, it is clear that Mr. Sharp does not present a risk of flight or pose a danger to himself or others in the community. Mr. Sharp, now fifty-five (55) years old, was born and raised in Washington D.C. and has resided in the area for more than thirty (30) years. Furthermore, Mr. Sharp lives with his parents who are in their late seventies. In this sense, his family and community ties are both strong, factors weighing against an inference that Mr. Sharp poses a risk of flight and/or danger to others or the community.

Additionally, Mr. Sharp has no prior criminal history, nor is there any report concerning his abuse of or problems with alcohol or drugs. Mr. Sharp has been fully compliant in the instant matter: he has pleaded by way of information, opting to waive his right to a Grand Jury indictment; he has answered all of the Court's questions in a candid and open fashion; and he agreed to make a full video-taped statement at the government office after the Immigration of Custom Enforcement ("ICE") agents came to his home. Mr. Sharp has always been cognizant of the weight of the evidence against him as well as the sentence he is facing. Knowing full well the consequences of the case and his decision to plead guilty, Mr. Sharp has been present at all proceedings as required by this Honorable Court.

Further, this case does not involve an individual who, pending sentence, is mentally or physically unable to function in society without a risk of harm to himself, others, or the community. In United States v. Peden, 891 F.2d 514 (1989), the Fifth Circuit Court of Appeals ruled that the district court was justified in denying

defendant's release on bond pending appeal where he had been convicted of receiving child pornography via the United States mail. In so holding, the court relied on the testimony of the defendant's treating psychiatrist, who informed the court that the defendant was a compulsive pedophile. Concerning this assessment, his psychiatrist stated that the defendant was in immediate need of intensive psychiatric care, without which his obsessive behavior might well pose a risk to others and to the community.

In the instant case, Mr. Sharp has voluntarily sought the professional services of Dr. Jennifer L. Marshall, THD, PLLC. Upon information and belief, Dr. Marshall determined that Mr. Sharp is not at risk of flight and does not pose a danger to himself or the community. Dr. Marshall has prepared an analysis and report to this effect and is prepared to offer testimony at the oral hearing with respect thereto. Unlike the defendant in Peden, Dr. Marshall's evaluation of Mr. Sharp provides strong support in favor of release. Additionally, he has routinely attended Sex and Love Addicts Anonymous (SLAA) meetings, which will be addressed shortly (See Documentation attached hereto as exhibit "A").

Due to a conflict in scheduling, Dr. Marshall was unable to submit a completed report at this time. However, Dr. Marshall is in the process of finishing said document. It is counsel's intention to supplement this Motion with a completed report tomorrow, October 5, 2007.

Pursuant to its legislative powers, Congress has amended and supplemented 18 U.S.C. § 3142 by passing the Child Protection and Safety Act of 2006 ("Adam Walsh Act"), which now requires that in any case involving a minor victim under

2252(a)(2), any release order must, at the very least, contain a condition of electronic monitoring. *Child Protection and Safety Act* § 216 (2006). Therefore, on its face, the statute allows for the pre-sentence release of an individual who has been convicted of violating § 2252(a)(2) unless the court cannot ensure the presence of the defendant at court proceedings or the safety of the community is at issue. However, that situation is not before this Honorable Court: Mr. Sharp poses no greater risk of flight or danger to the community now than he did before conviction. As previously stated, he has always been aware of the consequences of his case, yet the court, with the ability to make its own full determination, found sufficient conditions and justifications warranting his pre-trial release. The plain language of the statute and its legislative history clearly contemplate situations where an individual may be released pending imposition of a sentence so long as the court can be satisfied that the person will remain compliant with court orders and not pose a danger to himself or the community. The evidence in this case, including Mr. Sharp's overt actions as well as independent psychological analysis, provide objective and conclusive indicia that presentence electronically-monitored release, would not pose a risk of flight or a danger to the community.

**b. <u>MR. SHARP SHOULD BE GRANTED A RELEASE PENDING SENTENCING PURSUANT TO 18 U.S.C. § 3145(c) BECAUSE HIS CASE PRESENTS EXCEPTIONAL REASONS THAT MAKE DETENTION INAPPROPRIATE UNDER THE CIRCUMSTANCES NOW BEFORE THE COURT.</u>**

In <u>Devinna</u>, 5 F.Supp. 2d 872, the Court noted that, even assuming that an individual has shown that he is unlikely to flee or pose a danger to society, showing just these things cannot be considered exceptional. In this sense, courts require evidence that clearly establishes a situation which is unique, uncommon, rare or out of the ordinary. Although no finite list of per se exceptional circumstances exists, there are certain activities and situations in which defendants engage that courts have viewed favorably.

In <u>Mitchell</u>, 358 F.Supp. 2d 707, the court found exceptional circumstances justifying continued release by relying on two factors. First, the court noted that the defendant had fully cooperated with the government throughout its investigation and had complied with the pre-trial requirements imposed by the Court. Furthermore, the court reasoned that the mere fact that the defendant had completed his cooperation prior to pleading guilty did not eliminate the opportunity for continued release pending sentencing: "it would be incongruent to treat a defendant differently than past cooperators solely because he had provided all the assistance he could." <u>Id</u>. at 708. Likewise, the court held that the possibility of downward departure – due to defendant's compliance and assistance – constituted an additional incentive to comply with release conditions.

Secondly, the court focused on defendant's performance while on pre-trial release. The magistrate judge originally granted defendant's release because he

had no prior record, was a life-long resident of the city, and was gainfully employed. The magistrate judge imposed certain release conditions, including electronic monitoring, regular reporting to pre-trial services and various drug testing requirements. Further, the defendant's mother had posted her home as collateral, and defendant was required to live with her while awaiting trial. Defendant complied with all court mandates, and the evidence suggested that the defendant had renounced his criminal activity. Ultimately, the court found that the defendant's conduct went beyond mere compliance with release conditions and was, compared to other defendants charged with similar offenses, out of the ordinary. Id. at 709.

In the instant case, Mr. Sharp has satisfied both factors alluded to in Mitchell. First, Mr. Sharp's pre-trial assistance in this case cannot be doubted. When initially confronted by ICE agents at his home, Mr. Sharp provided the officials with a statement. Thereafter, he voluntarily presented to their office and submitted a videotaped statement describing the events that had transpired. Mr. Sharp has plead by way of information, opting to waive his right to a Grand Jury indictment, and has answered all of this Honorable Court's questions candidly and openly. Furthermore, he has complied with all of the Court's pre-trial release requirements without issue.

In assessing an individual's post-offense conduct in order to determine whether exceptional reasons exist for pre-sentence release, courts give substantial weight to a defendant's efforts at rehabilitation. [2] In United States v. Kapitzke, 130

---

[2] See United States v. Kaquatosh, 252 F.Supp. 2d 775 (E.D. Wis. 2003), relying, among other things, on a defendant's successful completion of a substance abuse treatment program while on pre-trial release in finding the existence of "exceptional circumstances."

F.3d 820 (C.A.8 1997), the Eighth Circuit Court of Appeals held that a defendant's post-offense rehabilitation efforts were "extraordinary" and justified a downward departure in his sentencing. The court noted that defendant had voluntarily entered the sex offender treatment program shortly after his arrest. Further, the court found it significant that he had received excellent progress reports from his counselors. The director of the program believed Kapitzke to be an excellent candidate for success, but noted that imposition of a prison sentence could have a negative effect on his treatment continuity. Id. at 824. Relying on objective indications that he wanted to regain control of his life, keep his family intact, and that he was a candidate who possessed a high probability of success, the court held that defendant's circumstances were exceptional and his rehabilitative efforts extraordinary.

Likewise, in United States v. Barton, 975 F.2d 944 (C.A.2 N.Y. 1992), the Second Circuit Court of Appeals relied on objective criteria in reasoning that an individual convicted of receiving child pornography may be entitled to a downward departure in light of his/her rehabilitative efforts, provided those efforts are extraordinary. In so holding, the court noted that district courts must conscientiously examine all of the pertinent circumstances, including the nature of defendant's addiction, the characteristics of the program he has entered, the progress he is making, the objective indications of his determination to rehabilitate himself, and his therapist's assessment of his progress toward rehabilitation. Id. at 503-04.

Although addressing downward departure at the sentencing phase, Kapitzke and Barton provide relevant explanations and persuasive arguments concerning rehabilitative efforts that are exceptional – "out of the ordinary." As in Kaptizke, Mr.

Sharp has routinely and voluntarily participated in Sex and Love Addicts Anonymous (SLAA) meetings since committing the offense for which he has now been convicted. (See Documentation attached hereto as Exhibit "A"). Again, on his own volition, he has received a full psychological evaluation from Dr. Jennifer Marshall. The objective facts and circumstances surrounding Mr. Sharp's treatment document his progress and indicate a high probability of successful rehabilitation.

Finally, and perhaps most compelling, is the strong public policy interest in favor of rehabilitation. In United States v. Nieman, 828 F.Supp. 254 (S.D.N.Y. 1993), the District Court for the Southern District of New York was presented with the question of whether non-narcotic rehabilitation prospects may be the basis for a downward departure from the United States Sentencing Guidelines where chances of rehabilitation without imprisonment are good, but with imprisonment are minimal or non-existent. In answering the question in the affirmative, the court was guided by common sense and Congressional intent: "Congress must have anticipated that sentencing judges would use their authority, in appropriate cases, to place a defendant on probation in order to enable him to obtain needed…medical care, or other correctional treatment in the most effective manner." Id. at 255. In ordering probation, the court noted that a presentence investigation report concluded that defendant showed genuine remorse for his criminal activity, appeared to be turning his life around, and would face a setback in his rehabilitation if imprisoned. Id.

The importance of rehabilitation cannot be overstated. Although directly beneficial, improving Mr. Sharp's mental health would not be the only consequence of granting his presentence release. *Realistically, the only means of attaining a*

*downward departure at sentencing for the type of crime involved here are extraordinary rehabilitative efforts.* As the statutory language indicates, however, commission of a "violent crime" generally mandates presentence detention. Therefore, an individual in Mr. Sharp's position is faced with the inevitable and unfair truth that his only chance at a reduced sentence – his only opportunity to seek treatment for his illness – will be unavailable to him. Additionally, Mr. Sharp will be unable to attain a lower classification of risk from the Bureau of Prisons should he be denied the opportunity to self-surrender.

In an age where the protection of citizens is of dire importance, counsel respectfully moves this court to not disregard those who are most vulnerable. Society has labeled people like Mr. Sharp as unworthy of sympathy or consideration, as evidenced by the legislation and public outcry directed at individuals convicted of crimes similar to those at issue in this case. In accordance with the principles of fairness and justice, Mr. Sharp urges this Honorable Court to protect his constitutional rights, his chances at rehabilitation, and the opportunity to spend time with his family. Justice cannot prevail when one's fundamental rights are permitted to rise and fall based on the social and political tides of today.

**WHEREFORE**, the Defendant, Dennis Sharp respectfully requests that this Honorable Court grant the Motion for Release Pending Sentencing and order that he continue treatment and abide by any conditions that this Honorable Court deems appropriate.

Respectfully submitted,

_/s/ Ian N. Friedman_
IAN N. FRIEDMAN (0068630)
Lead Counsel for Defendant
Ian N. Friedman & Associates, LLC
700 West St. Clair Avenue, Suite 110
Cleveland, OH 44113
(216) 928-7700
ifriedman@inflaw.com

_/s/ Jeffrey T. Green_
Jeffrey T. Green (426747)
Local Counsel
Sidley Austin LLP
1501 K Street NW
Washington, D.C. 20005-1401
(202) 736-8291
jgreen@sidley.com

This note is being written to acknowledge that _Dennis S._ attended our
(Name)

S.L.A.A. Meeting on _Thur_____, ____August____ _23___, 2007, at
(Day of the week)      (Month)      (Date)

_12 : 00_ AM (PM)
(Time)

_Darian Brown_
(Signature)



**S. L. A. A.**
**Dupont Circle Club**
**1623 Connecticut Avenue, NW**
**(Above Melody Records)**
**2nd Floor, Milton J. Room**
**Washington, DC**


This note is being written to acknowledge that _DENNIS_ attended
(Name)

our S. L. A. A. meeting on _FRIDAY_ , _AUGUST_ _24_
(Day of the week)     (Month)     (Date)

2007, at _7:5_ AM/PM.
(Time)

_____
(Signature)

**S. L. A. A.**
**Dupont Circle Club**
**1623 Connecticut Avenue, NW**
**(Above Melody Records)**
**2nd Floor, Milton J. Room**
**Washington, DC**

This note is being written to acknowledge that ___Dennis , S___ attended
                                                    (Name)

our S. L. A. A. meeting on ___Saturday___ , ___August___ ___25___ ___2007___ ,
                              (Day of the week)        (Month)              (Date)

2007, at ___6:00___ AM/PM.
            (Time)

_____
(Signature)

**S. L. A. A.**
**Memorial United Methodist Church**
**9226 Colesville Road, Room 25**
**Silver Spring, MD**

This note is being written to acknowledge that _Dennis S._ attended
(Name)

our S. L. A. A. meeting on _Wed._ , _August_ _29_ ,
(Day of the week)        (Month)        (Date)

2007, at _1715_ AM/**PM.**
(Time)

_(signature)_
(Signature)

**S. L. A. A.**
**Church of the Epiphany**
**1317 G Street, NW**
**(Willard Room)**
**Washington, DC**

This note is being written to acknowledge that ___Dennis D.___ attended
                                                    (Name)

our S. L. A. A. meeting on ___Thur.___, ___August___ ___30___,
                              (Day of the week)    (Month)    (Date)

2007, at ___12:00___ AM/PM.
          (Time)

___William M.___
      (Signature)

**S. L. A. A.**
**Dupont Circle Club**
**1623 Connecticut Avenue, NW**
**(Above Melody Records)**
**2nd Floor, Milton J. Room**
**Washington, DC**

This note is being written to acknowledge that _Dennis D_ attended
(Name)

our S. L. A. A. meeting on _Sat._ , _Sept._ _1_ ,
(Day of the week)     (Month)     (Date)

2007, at _6:00_ AM/PM.
(Time)

_[Signature]_
(Signature)

**S. L. A. A.**
**First Baptist Church**
1328 16th Street, NW
**(Between 16th & 17th on "O" Street)**
**Washington, DC**

This note is being written to acknowledge that ___*Dennis D.*___ attended
(Name)

our S. L. A. A. meeting on ___*Tues*___, ___*Sept.*___ ___*4*___,
(Day of the week)        (Month)        (Date)

2007, at ___*7:15*___ AM/PM.
(Time)

_____
(Signature)

**S. L. A. A.**
**Church of the Epiphany**
**1317 G Street, NW**
**(Willard Room)**
**Washington, DC**

This note is being written to acknowledge that _Dennis S_ attended
(Name)

our S. L. A. A. meeting on _Thurs._, _Sept._ _6_,
(Day of the week)     (Month)     (Date)

2007, at _12:00_ AM/PM.
(Time)

_[signature]_
(Signature)

**S. L. A. A.**
**Dupont Circle Club**
**1623 Connecticut Avenue, NW**
**(Above Melody Records)**
**2nd Floor, Milton J. Room**
**Washington, DC**

This note is being written to acknowledge that _Dennis S._ attended
(Name)

our S. L. A. A. meeting on _Sat._ , _Sept._ _8_
(Day of the week)        (Month)        (Date)

2007, at _6:00_ AM/PM.
(Time)

_Bernard A_
(Signature)

**S. L. A. A.**
**Dupont Circle Club**
**1623 Connecticut Avenue, NW**
**(Above Melody Records)**
**2nd Floor, Milton J. Room**
**Washington, DC**

This note is being written to acknowledge that ___Dennis S.___ attended
(Name)

our S. L. A. A. meeting on ___Sun___ , ___Sept.___ ___9___ ,
(Day of the week)      (Month)      (Date)

2007, at ___7815___ AM/PM.
(Time)

_____
(Signature)

**S. L. A. A.**
**First Baptist Church**
**1328 16th Street, NW**
**(Between 16th & 17th on "O" Street)**
**Washington, DC**

This note is being written to acknowledge that _Dennis S._ attended
(Name)

our S. L. A. A. meeting on _Tues._ , _Sept._ _11_ ,
(Day of the week)     (Month)     (Date)

2007, at _7:15_ AM/PM.
(Time)

_Keem n._
(Signature)

**S. L. A. A.**
**Memorial United Methodist Church**
**9226 Colesville Road, Room 25**
**Silver Spring, MD**

This note is being written to acknowledge that _Dennis S._ attended
(Name)

our S. L. A. A. meeting on _Wed._ , _Sept._ _12_ ,
(Day of the week)        (Month)        (Date)

2007, at _7:00_ AM/PM.
(Time)

_Mike P._
(Signature)

**S. L. A. A.**
**Church of the Epiphany**
**1317 G Street, NW**
**(Willard Room)**
**Washington, DC**

This note is being written to acknowledge that _Dennis S._ attended
                                                (Name)

our S. L. A. A. meeting on _Thurs_ , _Sept._ _9-13-07_
                           (Day of the week)   (Month)      (Date)

2007, at _12:00_ AM/PM
         (Time)

_Stanley B_
   (Signature)

# S. L. A. A.
## Memorial United Methodist Church
### 9226 Colesville Road, Room 25
### Silver Spring, MD

This note is being written to acknowledge that _Dennis S._ attended
(Name)

our S. L. A. A. meeting on _Wed._ , _Sept._ _19_ ,
(Day of the week)        (Month)        (Date)

2007, at _7:00_ AM/PM.
(Time)

_____
(Signature)

**S. L. A. A.**
**Church of the Epiphany**
**1317 G Street, NW**
**(Willard Room)**
**Washington, DC**

This note is being written to acknowledge that _Dennis S_ attended

our S. L. A. A. meeting on ___Thurs___ , ___Sept.___ , ___20___
                          (Day of the week)    (Month)        (Date)

2007, at _12:00_ AM/PM.
         (Time)

_Chuck E._
(Signature)

**S. L. A. A.**
**Dupont Circle Club**
**1623 Connecticut Avenue, NW**
**(Above Melody Records)**
**2nd Floor, Milton J. Room**
**Washington, DC**

This note is being written to acknowledge that _Dennis S._ attended
(Name)

our S. L. A. A. meeting on _Sat._, _Sept._ _22_,
(Day of the week)    (Month)    (Date)

2007, at _6:00_ AM/**PM.**
(Time)

_Bernard_
(Signature)

**S. L. A. A.**
**Triangle Club**
**2030 P Street, NW**
**(Above Lustre Cleaners)**
**Washington, DC**

This note is being written to acknowledge that _Dennis S._ attended
_(Name)_

our S. L. A. A. meeting on _Mon._ , _Sept._ _24_ ,
_(Day of the week)_    _(Month)_    _(Date)_

2007, at _6:35_ AM/PM
_(Time)_

_____Jin P._____
_(Signature)_

**S. L. A. A.**
**First Baptist Church**
**1328 16th Street, NW**
**(Between 16th & 17th on "O" Street)**
**Washington, DC**

This note is being written to acknowledge that _Dennis S._ attended
(Name)

our S. L. A. A. meeting on ___Tues___, ___Sept.___ ___25___,
(Day of the week)     (Month)     (Date)

2007, at _7:15_ AM/PM.
(Time)

_Kelly ____
(Signature)

## S. L. A. A.
## Memorial United Methodist Church
### 9226 Colesville Road, Room 25
### Silver Spring, MD

This note is being written to acknowledge that _Dennis S._ attended
(Name)

our S. L. A. A. meeting on _wed._ , _Sept._ _26_ ,
(Day of the week)  (Month)  (Date)

2007, at _7:00_ AM/PM
(Time)

_(Signature)_

**S. L. A. A.**
**Church of the Epiphany**
**1317 G Street, NW**
**(Willard Room)**
**Washington, DC**

This note is being written to acknowledge that _Dennis S._ attended

our S. L. A. A. meeting on _Thurs_ , _Sept._ , _27_
        (Day of the week)  (Month)  (Date)

2007, at _12:00_ AM/PM.
   (Time)

_Chuck E._
 (Signature)

**S. L. A. A.**
**Triangle Club**
**2030 P Street, NW**
**(Above Lustre Cleaners)**
**Washington, DC**

This note is being written to acknowledge that _Dennis S_ attended
(Name)

our S. L. A. A. meeting on _Monday_ , _August_ _27_ ,
(Day of the week)          (Month)          (Date)

2007, at _6:35_ AM/PM.
(Time)

_____
(Signature)

8-27-07        (Monday)

Left home at 5:54 PM to attend
6:35 PM meeting of SLAA, located at
2030 P- Street, N.W.
Arrived at meeting place at 6:30 PM          36 min.
(Construction on P-Street; No Parking.)

Waited for 18 min. and no one showed.          18 min.
Called for my ride from around the corner          4 min.

Arrived back home at 7:26 PM          34 min.