IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 07-CR-00231 |
| | ) | |
| Plaintiff, | ) | JUDGE COLLEEN KOLLAR |
| | ) | KOTELLY |
| -vs- | ) | |
| | ) | |
| DENNIS D. SHARP, | ) | **DEFENDANT'S AMENDED** |
| | ) | **MEMORANDUM IN SUPPORT** |
| Defendant. | ) | **OF SENTENCING** |
| | ) | |
| | ) | |

On January 18, 2008, the Defendant, Dennis D. Sharp, will come before this Honorable Court for sentencing in response to a guilty plea to one (1) count in violation of Title 18 United States Code §2252A(a)(2), to wit: Possession of Child Pornography. Provided that the Court determines that the Defendant is entitled to a two point downward adjustment for acceptance of responsibility, and assuming that the Government moves this Honorable Court for an additional one (1) point reduction pursuant to U.S.S.G. § 3E1.1, the applicable guidelines range is seventy-eight (78) to ninety-seven (97) months. Presentence Report ¶61.

The purpose of the instant memorandum in support of sentencing is to bring to light additional information pertaining to the Defendant. Herein, the Defendant argues for a sentence at the lowest end of the calculated guideline range. However, the Defendant takes the position that the guidelines are but one factor that this Honorable Court must consider when imposing a sentence pursuant to 18 U.S.C. §3553. For the reasons set forth in this instant memorandum and those to be presented at the sentencing hearing, the Defendant

urges this Honorable Court to utilize its discretion when deciding upon a reasonable sentence in this matter and to sentence the Defendant to a term of incarceration below the calculated guideline range.[1]

> **A.    AT THE TIME OF SENTENCING, IT WILL BE THIS HONORABLE COURT'S DUTY TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY TO COMPLY WITH THE PURPOSES OF FEDERAL SENTENCING.**

At the time of sentencing, it is respectfully submitted that it will be this Court's duty to impose a sentence sufficient, but not greater than necessary, to comport with the purposes of sentencing as set forth in 18 U.S.C. §3553(a)(2)(A)-(D).  Such purposes of sentencing include promoting respect for the law, which includes providing just punishment in light of the seriousness of the offense; affording adequate deterrence; protecting the public from further crimes by the Defendant; and providing the Defendant with any needed rehabilitation and treatment.

In light of *United States v. Booker,* 543 U.S. 220 (2005), this Honorable Court shall engage in a multi-step analytical process at sentencing.  First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range.  *United States v. Doe*, 412 F. Supp.2d 87, 90 (D.D.C. 2006).  After making appropriate findings of fact, the Court must determine whether a sentence within that range serves the factors set forth in §3553(a). *United States v. Edwards*, 427 F. Supp.2d 17, 28 (D.D.C. 2006).  Finally,

---

[1] On January 4, 2008, the Defendant filed a version of the instant sentencing memorandum.  On page one (1) of the memorandum, the Defendant incorrectly stated that "In keeping with the terms of the plea agreement, the Defendant cannot argue for a sentence lower than seventy-eight (78) months."  This is not a correct statement.  While the plea agreement precludes the Defendant from arguing for a downward adjustment under the Guidelines, paragraph eight (8) of the agreement makes clear that the Defendant is permitted to argue for a lesser sentence based upon factors to be considered pursuant to 18 U.S.C. §3553(a), which is the position advocated throughout this memorandum as a whole.

the Court must articulate the reasons for the sentence imposed in light of the factors set forth in §3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2458 (U.S. 2007).

In fashioning a minimally sufficient sentence that complies with the goals of sentencing presented in 18 U.S.C. §3553(a), a Court shall consider the following seven factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the purposes of sentencing [as set forth above];

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

**1.  Relative weight to be given to the sentencing guidelines**

In *Rita v. United States*, the United States Supreme Court clarified that while an appellate court may apply a presumption of reasonableness to a district court sentence imposed within a properly calculated guideline range, such a presumption does *not* apply in the district court.[2]  Specifically, the Court held that "[i]n determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the

---

[2] *See Rita*, 127 S.Ct. at 2465.

Guidelines sentence should apply."[3]  *Rita* tells us that sentencing courts are expressly barred from entertaining the non-binding "presumption" that the Supreme Court says that appellate courts "may" enjoy.  Further, a district court need not say it is applying a presumption in order to be reversed.  It may *not* say, for example, that it does not see "any reason why the guideline sentence isn't appropriate" in a particular case, or that it cannot sentence below the guideline range unless a defendant has "presented some kind of good reason."[4]

*Rita* further instructs that appellate courts may no longer give greater deference to the Sentencing Commission's supposed fact-finding (i.e., certain circumstances are "not ordinarily relevant"), than to a district court judge's real findings of fact (i.e., application of a judge's experience and discretion regarding relevancy).[5]  Put another way, a district court's below-guideline sentence cannot be trumped by any deference to "fact-finding" by the Sentencing Commission in the guidelines.

District courts are no longer required – or even *permitted* – to simply defer to the policies contained in the sentencing guidelines.[6]  For example, the Seventh Circuit Court of Appeal recently affirmed a seventy-month (70) sentence for downloading *and sharing* child pornography (more severe conduct than that involved in the instant case), where the advisory guideline range was 121-151 months.[7]  The *Wachowiak* court endorsed the district court's freedom and discretion under *Rita* to find the sentencing guidelines inadequate.  The

---

[3] *Id.*

[4] *See United States v. Ross*, --- F.3d ---, 2007 WL 2593509 (7th Cir. Sept. 11, 2007) (reversing based on those statements).

[5] *Rita*, 127 S.Ct. at 2463 ("Nor does the presumption reflect strong judicial deference of the kind that leads appeals courts to grant greater factfinding leeway to an expert agency than to a district judge.").

[6] *Id.* at 2465, 2468 (district court may conclude that the guideline sentence fails to reflect § 3553(a) considerations, reflects unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate, "regardless").

[7] *United States v. Wachowiak*, --- F.3d ---, 2007 WL 2189561 (7th Cir. Aug. 1, 2007).

appellate court approved of the district court's review of the § 3553(a) factors, and its conclusion that the guidelines failed to adequately account for all relevant sentencing factors.[8]

The application of—and departure from—the advisory Guidelines has recently been further clarified by the United States Supreme Court in *Gall v. United States*.[9]  In *Gall,* the Court held that when reviewing the reasonableness of a sentence outside of the advisory Guidelines range, an appellate court may consider the degree of the variance from the Guidelines, but no rule requires "extraordinary" circumstances to justify a sentence outside the Guidelines range, nor shall a court engage in any sort of proportionality analysis.[10] Furthermore, in reviewing a sentence that departs from the recommended Guidelines range, the extent of the difference between a particular sentence and the recommended Guidelines range is relevant, but the appellate court must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under an abuse of discretion standard.[11] In practical terms, the Court explained that after an appellate court reviews a sentence, the appellate may, but is not required to, apply a presumption of reasonableness to a sentence within the Guidelines.  Similarly, the appellate court may not necessarily apply a presumption of unreasonableness to a sentence outside the Guidelines range.[12]

On the whole, in both *Rita* and *Gall*, the United States Supreme Court reiterated that a

---

[8] Among other things, the district court in *Wachowiak* concluded that the defendant's strong expression of remorse, and his introspection and insight into his condition were mitigating factors not adequately accounted for by the "acceptance of responsibility" adjustment and, further, that defendant's nature and strength of character, as testified by his family and friends, etc., were mitigating factors not adequately reflected in the guidelines criminal history calculation.  *See id.*
[9] 128 S.Ct. 586 (Dec. 2007).
[10] *Id.* at 595.
[11] *Id.* at 597.
[12] *Id.*

sentencing court must act independently of the Guidelines and give due deference to the factors set forth in 18 U.S.C. § 3553(a). In the case at bar, although the advisory Guidelines call for a sentence in the range of 78-97 months, this Honorable Court must not end its analysis there, for this Guidelines range is only one of many factors to consider in arriving at the ultimately reasonable sentence.

**B.    18 U.S.C.§3553(A)—MITIGATING FACTORS THAT WEIGH IN FAVOR OF A LESSOR SENTENCE**

### 1. The history and characteristics of Mr. Dennis D. Sharp

#### a. Psychological and Mental History

In terms of his mental and emotional health, prior to the instant litigation, Mr. Sharp never received formal psychological counseling though he suffered from sexual, psychiatric and psychological problems. Following commencement of the instant litigation, Mr. Sharp acknowledged his need for help, and he began attending Sex and Love Addicts Anonymous (SLAA) meetings,[13] which he found extremely beneficial. PSR ¶41. Furthermore, he underwent a psychosexual evaluation performed by Dr. Jennifer Marshall. During this meeting with Dr. Marshall, Mr. Sharp recounted various sexual and psychological urges that he has experienced throughout his lifetime. PSR ¶42. Ultimately, Dr. Marshall concluded that Mr. Sharp is amenable to sex offender treatment and needs to participate in such treatment at an institution." PSR ¶46. The Defendant recognizes his need for sexual and psychological treatment and he wishes to participate in individual and group treatment during his incarceration.

---

[13] Mr. Sharp attended a total of twenty-one (21) SLAA meetings from August to September of 2007. *See* PSR ¶41.

Mr. Sharp's overall physical health is relatively satisfactory. However, he has been diagnosed with high blood pressure, for which he is prescribed Lipitor. PSR ¶39. Further, Mr. Sharp is reportedly a "borderline diabetic." PSR ¶39. Additionally, he maintains lingering ailments from injuries that he suffered earlier in his lifetime, mainly pain in his lower vertebra due to a pinched nerve and discomfort in his shoulder and left ankle. PSR ¶40.

### b.  Personal History

Mr. Sharp is a fifty-five (55) year-old male with no prior criminal history.  He was born and raised in Washington, D.C. and has resided in the area for more than thirty (30) years.  Mr. Sharp lives with his parents who are in their late seventies.  At various points throughout his lifetime, Mr. Sharp has worked as a caretaker at the family's turkey farm in Orange County, Virginia, has worked for his father's home improvement business, and has worked for his brother's accounting business.  Over the past eleven (11) years, Mr. Sharp has been essentially self-employed. PSR ¶51.

Mr. Sharp has two (2) brothers, Bennie Jr., age fifty-five (57), and Donald, age fifty-three (53); one (1) sister, Romaine, age fifty-six (56); and multiple nieces and nephews. PSR ¶33.  He has never been married, and has no children. PSR ¶35.

### c.  Support of Family and Friends

In anticipation of sentencing, Mr. Sharp contacted his friends and family members and asked that they write support letters on his behalf.  Not long after Mr. Sharp made his request known, undersigned counsel received multiple letters from people wishing to make their support of Mr. Sharp known to this Honorable Court.  Throughout the letters counsel

received, the theme remains consistent:  Mr. Sharp's life has consistently been one of strong faith, generosity and service to his friends and family.

Mr. Sharp's family members have been unwavering in their support of him.  His father, Bennie L. Sharp, Sr., writes that his son plays an invaluable role in his life.  Bennie Sharp, Sr., notes that "because of health issues, he must help me with bathing, take me and his mother to our various doctors appointments, maintain the upkeep on our properties, and when he could, perform household chores, including preparing meals." (Please see letter from Bennie Sharp, Sr. attached hereto as Exhibit A).  Similarly, Mr. Sharp's mother, Lillian Sharp, references Mr. Sharp's devotion toward his family.  She further states that Mr. Sharp "regrets with all his heart and soul this lapse in judgment.  (Please see letter from Lillian Sharp attached hereto as Exhibit B).

Many of the family letters in support of Mr. Sharp speak of the impact he has on his nieces and nephews.  Romaine Sharp, Mr. Sharp's sister, describes the bond her sixteen (16) year-old daughter has formed with Mr. Sharp.  "He is a father-figure to her and I depend on his nurturing, positive influences, and steadfast support in her growth and development." (Please see letter from Romaine Sharp attached hereto as Exhibit C).  Mr. Sharp's brother, Bennie L. Sharp, Jr., further references Mr. Sharp's bond with his niece by stating "my sister's sixteen (16) year-old daughter refers to me, Dennis, and our youngest brother as her three (3) fathers."  (Please see letter from Bernie Sharp, Jr., attached hereto as Exhibit D).  One letter even refers to Mr. Sharp as "a true backbone to all of the family including young nieces and nephews." (Please see letter from Margaret Sharp Gibson as Exhibit E).

Letters from Mr. Sharp's family members also repeatedly reference his constant support and caring for others. Donald G. Sharp, Mr. Sharp's brother, states that Mr. Sharp "is the most generous, genuinely giving person that I know." (Please see letter from Donald G. Sharp as Exhibit F). Overall, the attached letters describe Mr. Sharp as an exemplary family man, one of great integrity and faith. (Please see additional letters of support attached hereto as Exhibits G-H).

### 2. The kinds of sentences available and the applicable advisory guidelines range

The applicable term of incarceration for a violation of 18 U.S.C. § 2252 A(a)(2), is between zero (0) and ten (10) years. As noted at the outset, the applicable guidelines calculation spans seventy-eight (78) to ninety-seven (97) months of imprisonment. PSR ¶61. In this case, Mr. Sharp is ultimately subject to an adjusted offense level of twenty-eight (28) with a criminal history category of one (1). PSR ¶32. The Presentence Investigation Report calculated Mr. Sharp's offense level as follows:

| | |
|---|---|
| Base offense level pursuant to 2G2.2(a)(1) | 18 |
| Material involving a prepubescent minor | +2 |
| Material portrays sadistic or masochistic conduct | +4 |
| Offense involved use of a computer | +2 |
| Involved 600 or more images | +5 |
| Adjustment for acceptance of responsibility | -2 |
| Additional reduction at request of Government | -1 |
| **Total Offense Level** | **28** |

3.  **Sentence to reflect seriousness of offense, promote respect for the law, and provide just punishment**

Mr. Sharp asks the Court to sentence him to 78 months incarceration.  This sentence is sufficient to accomplish all of the goals of sentencing set forth by statute.  Further, given the specific circumstances presented by this case, as viewed through the § 3553(a) factors, the advisory guideline range is more than is necessary to reasonably meet these needs.  Mr. Sharp submits that a sentence of 78 months adequately satisfies these considerations, without violating the statutory directive of having a sentence "not greater than necessary."

4.  **Adequate deterrence to criminal conduct**

With respect to specific deterrence, Mr. Sharp has spent approximately ninety-three (93) days incarcerated.  This short period of incarceration has already clearly conveyed the message to him that he must not commit this crime (or any crime, for that matter) ever again. This is Defendant's first experience with the criminal justice system in his 55 years of life, and the Court most assuredly has his full and undivided attention.  Regardless of whether Mr. Sharp initially understood the seriousness or wrongfulness of his behavior, he certainly understands now.   The collateral consequences of Mr. Sharp's actions – i.e., lifetime supervised release, sex offender registration, the effective loss of his life as he knew it – are significant, and provide a level of deterrence above and beyond any term of imprisonment he will ultimately serve.  Further, by taking advantage of rehabilitative programs, treatment and training while incarcerated and upon his release, Mr. Sharp greatly reduces his risk of reoffending.  A term of 78 months is sufficient to accomplish this goal of sentencing.

5.  **Protect the public from further crimes by the defendant**

It is anticipated that Mr. Sharp will be incarcerated for a considerable period of time.

He will then commence a term of supervised release – with numerous and strict conditions – for the remainder of his life.  In addition, Mr. Sharp will have benefited from training and treatment while incarcerated, and will continue to be treated and monitored once released back to the community.  A sentence of 78 months, and the accompanying mandatory life term of supervised release, will adequately protect the public from any risk of further crimes by Defendant.

### 6.  Provide the defendant with needed education and vocational training, medical care, or other correctional treatment

As just noted, Mr. Sharp will avail himself of treatment and training programs while incarcerated, to the extent they are available to him.  Additionally, Mr. Sharp requires medical/psychological care, and requests that the same be recommend and/or ordered by the Court while he is incarcerated.  There is no need under this factor for a sentence any greater than 78 months.

### C.    THE IMPACT OF IMPRISONMENT ON OLDER INMATES

After consideration of the applicable guideline range and the factors set forth in 18 U.S.C. §3553(a) it becomes apparent that a sentence of seventy-eight (78) months is appropriate in the case at bar.  A sentence of seventy-eight (78) months is particularly sufficient when one considers Mr. Sharp's age – he is a fifty-five (55) year-old-man with certain health concerns.  According to a study examining the imprisonment of older individuals, "in the often hostile and highly stressful atmosphere of a correctional facility, where inmates tend to age at a much faster rate than the general population, the percentage of older prisoners having difficulty with personal activities is quite high."  Lyle B. Brown, Note, *The Joint Effort to Supervise and Treat Elderly Offenders: A New Solution to a Current*

11

*Corrections Problem*, 59 OHIO ST. L.J. 259, 264 (1998) (internal citations omitted). Similarly, the National Institute of Corrections [hereinafter NIC] recognizes that  first-time offenders over the age of fifty (50) face traumatic problems in prison and that such problems "accelerate their aging processes to an average of 11.5 years older than their chronological ages." *Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates*, U.S. Department of Justice, National Institute of Corrections, 2004 edition, p. 10.

Besides facing accelerated aging, older inmates regularly fall prey to abuse from other inmates and problems created by prison crowding.  The NIC has specifically noted that first-time offenders over the age of fifty (50) – like Mr. Sharp – "are 'easy prey' for more experienced predatory inmates" and likely to become the target of younger inmates.   See *Id*. To compound matters, prison crowding is also likely to adversely impact Mr. Sharp's health because federal facilities often do not have the resources necessary to provide the medical attention elderly inmates require.  *See*  Jason S. Orndoff, *Releasing the Elderly Inmate: A Solution to Prison Overcrowding*, 4 Elder Law Journal 173 (1996) (discussing the effects of overcrowding on elderly inmates and concluding that prisons cannot  provide the level of care that elderly inmates require).

Given his age and medical problems, Mr. Sharp's health will likely suffer disproportionately during the period of his incarceration.  *See* Christine J. Sutton, *From the Outside In: Using Public Health Data to Make Inferences About Older Inmates*, 61 Federal Probation 77 (1997) (studying the health care conditions between non-institutionalized elderly males and incarcerated elderly males and concluding that 13% of the former group

report fair to poor health as compared to 41% for the latter group). While the Eighth Amendment provides some measure of protection for inmates who require medical care, it does not assure adequate medical care or address the disproportionately punitive consequences of infirm inmates receiving only constitutionally sufficient treatment.

### D.      REQUEST FOR PRISON DESIGNATION

Pursuant to 18 U.S.C. § 3621, when deciding on the place of imprisonment for a convicted individual, the Bureau of Prisons may consider "any statement by the court that imposed the sentence." Because this Honorable Court stands in the best position to consider the history and circumstances of this case, Mr. Sharp respectfully moves this Court to recommend to the Bureau of Prisons that he be designated to the Federal Correctional Institute in Butner, North Carolina so that he may participate in the sex offender treatment program.

### E.      MISCELLANEOUS RELIEF REQUESTED

On October 5th, 2007, the Defendant filed a Supplement to Motion for Release Pending Sentencing, Docket No. 26, containing a forensic psychological evaluation performed by Jennifer L. Marshall, Clinical Psychologist. Mr. Sharp now respectfully requests that this Honorable Court seal the psychological evaluation for the purpose of protecting his privacy rights.

### F.      CONCLUSION

For the foregoing reasons, the Defendant, Mr. Dennis Sharp, respectfully requests that this Honorable Court impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in 18 U.S.C. §3553(a).

Respectfully submitted,


s/ *Ian N. Friedman*
IAN N. FRIEDMAN (0068630)
KRISTINA M. WALTER (0080609)
RONALD L. FREY (0078180)
Lead counsel for Defendant
Ian N. Friedman & Associates, LLC
700 West St. Clair Avenue, Suite 110
Cleveland, OH 44113
(216) 928-7700
ifriedman@inflaw.com
kwalter@inflaw.com
rfrey@inflaw.com


s/ *Jeffrey T. Green*
Jeffrey T. Green (426747)
Local Counsel
Sidley Austin LLP
1501 K Street NW
Washington, D.C. 20005-1401
(202) 736-8291
jgreen@sidley.com

## **CERTIFICATE OF SERVICE**

A copy of the foregoing has been electronically served this 7th day of January, 2008 to Jeffrey Pearlman, Assistant United States Attorney, via this Honorable Court's electronic case filing system.


s/ *Ian N. Friedman*
IAN N. FRIEDMAN
Lead Counsel for Defendant


s/ *Jeffrey T. Green*
JEFFREY T. GREEN
Local Counsel for Defendant

## **Appendix of Exhibits**

Exhibit A                Letter from Bennie L. Sharp, Sr.

Exhibit B                Letter from Lillian O. Sharp

Exhibit C                Letter from Romaine A. Sharp

Exhibit D                Letter from Bennie L. Sharp, Jr.

Exhibit E                Letter from Margaret Sharp Gibson

Exhibit F                Letter from Donald G. Sharp

Exhibit G                Letter from Debra E. Brown

Exhibit H                Letter from Frank H. Brewer, Sr.

The Honorable Colleen Kollar-Kotelly
United States District Court
Washington, DC

Dear Judge Kollar-Kotelly:

My name is Bennie L. Sharp, Sr. and Dennis D. Sharp is my son. I am pleased to say that, until this incident, none of my children, now all in their fifties, has ever had any criminal involvement with the legal system. All of my children are close to each other. Dennis and my youngest son are especially close. Dennis loves what it is to be a family. This whole thing breaks my heart. He is sensitive to others and kind hearted. As a young man, he was very involved with me in building a family housing and farming business. I could trust him to collect rents, maintain properties and handle tenants. I was able to trust and rely on him to make decisions to keep the business going. I have a lot of respect for my son for the way he directed the people who worked for us and the way he oversaw the completion of work. While he was younger than many of those who worked for us, they all came to respect his fairness and went to him for direction and guidance for the next steps. He was good with people and well liked. He loved to laugh, but never at anyone else. Without his efforts, the business could not have succeeded.

Dennis plays a big role in my life and in his mother's life. Because of health issues, he must help me with bathing, take me and his mother to our various doctors appointments, maintain the upkeep on our properties and when he could, perform household chores, including preparing meals. Without him the quality of our lives would be compromised.

My two granddaughters and my great grandchildren love their uncle. I know that my son and daughter have trusted Dennis with the care of their children.

While I do not understand this error on his part, I do not believe that Dennis could or would ever harm a child or anyone else in any way.

Sincerely,

Bennie L. Sharp, Sr.
713 D Street, NE
Washington, DC 20002
202-546-2671



THE OHIO LEGAL BLANK CO., INC.

DEFENDANT'S
EXHIBIT
A

Lillian O. Sharp
713 D Street, NE.
Washington, D.C. 20002
202-546-2671
December 30, 2007

The Honorable Colleen Kollar-Kotelly
United States District Court
Washington, D.C.

Dear Judge Kollar-Kotelly,

My name is Lillian Sharp. I am the Mother of Dennis Sharp. My husband and I have been married for fifty-eight years. We have four children, one daughter and three sons, all born and raised in Washington, DC. Our children attended schools and colleges in this area.

We have never had any disciplinary problems in school, the neighborhood, or with the police, pertaining to any of our children.

Dennis loves sports and has been an ardent fan of the Green Bay Packers' football team since elementary school. Before this incident, he was playing volleyball twice a week, attending church regularly, and working hard each day managing rental properties. He is a tremendous help to my husband and me due to our health issues. Dennis is also a tireless source of information to others who ask for or need his help.

Your Honor, Dennis is one of the nicest people I know. Maybe if you get a chance to talk with him, hopefully, you too would understand that he could not, or would not ever harm any one, in any way. I know he regrets with all his heart and soul this lapse in judgment.

We are a close knit family, all our hearts are saddened because of what has happened with Dennis. We never, in our wildest dreams, thought that one of our children would be in jail or prison. I did not realize the depth of their closeness until I overheard my youngest son talking to my daughter just after Dennis turned himself in to the police. He said he wished he could serve the time in jail with Dennis so they could watch each other's back, protect each other from harm.

Again, inspire of his lapse in judgment, Dennis could not harm anyone.

Your Honor, thank you very much for taking the time to read this.

Sincerely,

*Lillian O Sharp*

THE OHIO LEGAL BLANK CO., INC.

DEFENDANT'S
EXHIBIT
B

CLEVELAND, OHIO

Romaine A. Sharp (301-856-2817)
7205 Redwood Branch Court
Clinton, MD 20735
December 30, 2007

The Honorable Colleen Kollar-Kotelly
United States District Court
Washington, D.C.

Dear Judge Kollar-Kotelly:

Dennis Sharp is not just an inmate who made an awful mistake, he is my brother and I am his sister. In short, Dennis (mind, body and soul) is a gentle spirit who loves family, loves God, loves life, and, well, loves the Green Bay Packers. He is a good, decent man who would not intentionally break any law that has now cost him his freedom. Even that has not affected him as much as the embarrassment, more for his family than himself. If you looked at him during the hearings you saw his eyes lowered and his body slumped. He was ashamed. He feels strongly he has dishonored the family's reputation so much so he has asked us not to attend the hearings or even visit him in jail, especially my mother and me.

I would like to say I know and understand all that is happening, but I do not. I do know I am praying for a miracle. I know I love my brother unconditionally. I know our family stands with him during this crisis and draws closer. I know the therapist concluded that Dennis was not a threat to himself or anyone else. I know he was instrumental in expediting his own rehabilitation by voluntarily attending group sessions for sexaholics, regularly. And, finally, I know you are preparing to sentence a man you don't know, except for the charges against him. I just pray that all of his life is taken into consideration when it is time for sentencing. He really is a good man, who deserves the opportunity to not make the same mistake again.

On behalf of my 16 year old daughter, I want her to be able to see and call on her uncle Dennis freely and regularly. Breelyn loves her uncle very much and needs him in her life. He is a father-figure to her and I depend on his nurturing, positive influences and steadfast support in her growth and development. Their bond is rich with love, humor and consistency. Dennis has helped me raise a very caring, delightful, thoughtful and sometimes rebellious teenager. Although she is quick to accuse him of being old-fashioned and overly-protective, she is also quick to recognize his genuine love, support and understanding. I love, respect and trust my brother. I trust him with my life, and more importantly, I trust him with my daughter's life. She is my gift from God and in no way do I take her life lightly.

Dennis' faith, love of family and friends, and joy in life make him a man worth knowing. He has that patience and compassion that makes him patient with the young, compassionate with the aged, sympathetic with the striving, understanding of the weak and wrong and certainly stern with the hard-headed. With the opportunity, he has the ability to reach out to others about his experience and lapse in judgment.

No matter what you believe about inmate Dennis Sharp, he is not citizen Dennis Sharp. Dennis is an engaging person, with a wealth of knowledge on a variety of topics. He is always full of opinions and statistics, full of love and compassion and so full of life.

In spite of Dennis' lapse in judgment, please give him the opportunity to not make the same mistake again.

Sincerely,

Romaine A. Sharp



THE OHIO LEGAL BLANK CO., INC.
DEFENDANT'S
EXHIBIT
C
CLEVELAND, OHIO 44102-1799

The Honorable Colleen Kollar-Kotelly
United States District Court
Washington, DC

Dear Judge Kollar-Kotelly:

My name is Bennie L. Sharp, Jr. and I am the older brother of Dennis D. Sharp. My
parents had four children and gave us an understanding of the importance of
close family relationships. We were not just siblings, we were friends. While we are
definitely individuals, to this day we remain close. I have always seen Dennis as a
peacemaker. He always felt very strongly the importance of not giving offense and of not
taking offense easily. While he always knew the importance of standing up for himself,
he always sought to understand what the other person was trying to say or do. Before he
took an action, he needed to know the other person's side of the story. Dennis believed
in giving the benefit of the doubt. Dennis was kind and self-effacing. He was born with
an unusual eye color and when girls or women would remark upon the niceness of his
eyes, he would blush and dismiss the compliment. He never took it to heart, never sought
to manipulate or take advantage of another person. People were drawn to Dennis because
of his kindness, his big heart and his love of a good argument (usually about sports) that
always ended in laughter. Dennis has strong spiritual beliefs and has now become the
main caretaker of my parents as they have aged.

All through my daughter's school years, I could depend on Dennis to occasionally pick
her up from school. She clearly trusted him and enjoyed being with her uncle as he
conducted the business of owning property. In later years, my daughter referred to my
siblings and me as the "Brady Bunch". My sister's sixteen year old daughter refers to
me, Dennis and our youngest brother as her three "fathers". I am raising a granddaughter
and a grandson whom I love. I am their legal guardian and their protector. They have
formed a warm and loving bond with Dennis. He has added to the richness of their lives.
Because we have not told them the reality of Dennis' situation, they have wondered why
we have not visited him and why he has not visited us, why we don't have game night on
some Friday evenings and why he doesn't return their calls to him. I hurt when they tell
me that they want to see him. My 9 year old granddaughter became upset before
Christmas because she had not yet found a gift for him. Two days after Christmas, my 7
year old grandson said Christmas couldn't be over until he saw Uncle Dennis. Despite
this mistake in his judgment, I have no fears for their, or any other child's, well being or
safety when they are in the care of my brother.

Sincerely,

Bennie L. Sharp, Jr.
7205 Redwood Branch Court
Clinton, MD 20735
301-856-2819


THE OHIO LEGAL BLANK CO., INC.
DEFENDANT'S
EXHIBIT
D
CLEVELAND, OHIO 44102-1799

Margaret S. Gibson
1721 Lang Pl., N.E.
Washington, DC 20002
(202) 396-4421
January 2, 2008

The Honorable Colleen Kollar-Kotelly
U.S. District Court

Dear Judge Kollar-Kotelly

I, Margaret Sharp Gibson, am a sister of Dennis Sharp's father, Bennie Lee Sharp. I was born 7/27/1925 in Meridian, Mississippi, where I attended public school and graduated from High School in 1942. I attended Business School in Birmingham, Alabama, and began my Civil Service career at the Anniston Ordinance Depot as a Clerk Typist. I came to Washington, DC on 3/11/1944, to work for the U.S. Treasury Dept. In September of 1947 I began working at the U.S. Patent Office and retired from there on 8/22/1980. On 8/27/1980 I began my study at Rhema Bible Training Center where I graduated in 5/1981; and then studied for 1 year at the Tulsa Christian Center. I returned to Washington, DC in 8/1982 and joined Bible Way Church (1100 New Jersey Ave., N.W.), where I now serve as a Missionary, Sunday School Teacher and Intercessor in charge of the telephone prayer line.

I have known Dennis since his birthday on 3/18/1952, and always lived within 20 minutes of his home.

Dennis grew up in a close and loving family with what I call "a sort of sheltered life". I absolutely never knew of Dennis being a part of a gang. His family spent much time together including vacations. Dennis delights in helping people, particularly the elderly. He helps me by managing my rental property (a 5 unit apartment building). The tenants hold him in very high esteem.

Dennis grew up in the church and believes in Jesus Christ as his Lord and Savior. He is honest and very reliable, and demonstrates a kind and highly sensitive attitude towards the needs and welfare of others. He is a true backbone to all of the family including young nieces and nephews. He never had a bad report from school. He loves his parents and takes great care in serving them, as both his Mom and Dad are unable to keep their medical appointments and care for themselves alone. He shopped, chauffeured, cooked and performed household duties daily, many times having to serve them their meals in their bedroom upstairs.

I am aware of the error in judgment by him and feel very strongly that this mistake does not change who he really is.

Sincerely,

Margaret S. Sharp



Donald G. Sharp
2717 Ft. Baker Dr., S.E.
Washington, DC 20020
(202) 544-7513
December 26, 2007

The Honorable Judge Colleen Kollar-Kotelly
United States District Court
Washington, DC

Dear Judge Kollar-Kotelly:

I am the younger brother of Dennis Sharp. We shared the same bedroom for the first 23 years of my life; and lived in the same home for 46 years. I know him probably better than anyone on earth. He is the most generous, genuinely giving person that I know. Dennis would not hurt anyone, nor would he allow anyone to be hurt, especially a child. He would literally take action to save another person from harm, even at the risk of being hurt himself. Dennis is the type of man who doesn't just talk about helping others, he lives it. He sacrificed himself when he took over running a family owned farm. In the mid 1970's he quickly became assistant manager at Western Auto because of the manner in which he carried himself, other employees, even those who had been there longer, were drawn to him for advice and guidance.

He has been extremely close to our 27 year old niece and our 16 year old niece. They are to this date and have always been extremely close to and fond of him. He picked up both of his nieces when they were in elementary, middle school, and part of high school. He also has great nieces and nephews who miss him and desperately wonder why they have not seen him. Dennis waited on me hand and foot. I injured myself in 2005 and could not walk for almost 9 months. He is loved and respected by aunts, uncles, cousins, and family friends. He has friends who know and respect him from all walks of life.

We were raised in a very loving and close knit family, with an extremely strong Baptist base. There are 4 siblings in my family ages 57, 56, 55, and 54. Our entire family spent all holidays, anniversaries, birthdays and other family activities together as a unit, including annual family vacations. (As children we all ate dinner together every evening.) Dennis is a very positive man with a strong and sincere religious spirit. He is an individual who would literally give a man the shirt off of his back. Over the years Dennis has given of his time and energy in helping people, working in church and helping victims of natural disasters.

Dennis is an extremely and loyal person with family, friends and commitments. He was the main support for our uncle since his hip replacement in the summer of 2005. He has pulled for the same professional football team since 1962. If he says he will show up for something you can count on it. Until recent we played adult volleyball twice a week for the past 19 years.

Dennis has been the main care provider for our parents as they have advanced in age: getting them to and from their various doctor appointments and in helping them at home.

His mistake in judgment does not negate a life time of loyalty, commitment and help to family, friends and people in general.

This hopefully will let you know who the person Dennis Sharp really is over his life time. He is not just an inmate with a number. We are a very strong family that now has a void in its center.

Sincerely,

Donald D. Sharp

THE OHIO LEGAL BLANK CO., INC.

DEFENDANT'S
EXHIBIT
F

CLEVELAND, OHIO 44102-1799

December 29, 2007

The Honorable Colleen Kollar-Kotelly
United States District Court
Washington, DC

Dear Judge Kollar-Kotelly

I have known Mr. Dennis Sharp for over twenty-five years. Dennis as well as the entire Sharp family has become a means of support and strength to his family and all of his friends.

I can confirm that Mr. Sharp is a man of great integrity, and is extremely dedicated to his family and friends. Dennis has an excellent rapport with people of all ages. His interpersonal skills are without a doubt impeccable.

Despite his recent error in judgment, I have found Mr. Sharp to be dependable, hard working, conscientious, honest, peace-loving and a very courteous individual.

I would consider it an honor and a pleasure to provide further information if required.

Sincerely,

Debra E. Brown
Retired Federal Employee (30 years)
1822 Minnesota Avenue SE
Washington, DC  20020
202-889-0404



Frank H. Brewer, Sr.
4972 Keppler Rd.
Temple Hills, Md. 20748

January 2, 2008

The Honorable Colleen Kollar-Kotelly
U. S. District Court
Washington, DC

Dear Judge Kollar-Kotelly,

This letter is my statement of knowledge of Dennis Sharp, a personal friend for over 28 years. I have been around him and his family during this time and have never seen or experienced any type of negative, inappropriate or aggressive behavior. When Dennis would come to the shop we would talk about the stock market, sports, cars and about how he would like to some day build a log home for himself. My experience with him and his family has shown me that this is a very close family.

It is my belief that his error in judgment does not change who Dennis is.

If there is any additional information that I can provide, or knowledge of Dennis that I can give, please call me.

Sincerely,

Frank H. Brewer, Sr.
Cell: 240-375-5058
Office: 301-772-0402
Home: 301-899-8711

